Filed 12/20/24  P. v. Simpson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COLTON JAY SIMPSON,<br><br>    Defendant and Appellant. | D083157<br><br><br>(Super. Ct. No. SWF003288) |

APPEAL from a judgment of the Superior Court of Riverside County, John D. Molloy, Judge.  Affirmed.

Matthew Barhoma for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Natasha Cortina, Genevieve Herbert, and Caelle Oetting, Deputy Attorneys General, for Plaintiff and Respondent.


Colton Jay Simpson's sentence of 50 years to life plus 16 years was reduced to 50 years to life plus five years when he was resentenced under

Penal Code section 1172.75.[1]  In resentencing Simpson, the trial court struck all enhancements except one prior serious felony enhancement.

Simpson raises three issues on appeal:  First, that when sentencing him the trial court relied on incorrect facts extrapolated from his book describing gang life; second, that the court failed to consider the required statutory factors when deciding which of his priors to dismiss; and third, that the trial court erred in admitting at the sentencing hearing a copy of his book.  We reject Simpson's arguments and affirm the judgment.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Factual Background*

In our unpublished opinion on Simpson's direct appeal,[2] we described the underlying facts of his 2007 conviction:

> Simpson participated in a jewelry robbery as the driver of the get-a-away car.  The evidence showed:  Simpson "cased" the jewelry department which was later robbed; prevailed upon a recent acquaintance to rent a car for him; drove the rented car, with two accomplices, to the department store the three were planning to rob; one of the three in fact robbed the jewelry department of the store; and during a high speed chase which ensued Simpson was identified as the driver of the rented get-away-car.
>
> [¶] . . . [¶]
>
> When they searched Simpson's car, the deputies found a manuscript of a book "Inside the Crips."  The book described Simpson's life as the member of a gang, including his participation in a number of jewelry store robberies.  (*2009 Opinion*, *supra*, D055156.)

B.    *Procedural Background*

In 2007, a jury convicted Simpson of robbery (§ 211), evading a police officer (Veh. Code, § 2800.2), commercial burglary (§ 459), and grand theft of personal property (§ 487, subd. (a)).  His two prior prison terms (§ 667.5 subd. (b)) and 10 prior serious felony convictions (§ 667, subd. (a)) were also found true.  As a third-strike offender, the trial court sentenced Simpson to an indeterminate term of 50 years to life for robbery and evading a police officer and a determinate term of 52 years on the prior prison terms and serious felony allegations.[3]

---

2      *People v. Simpson* (Nov. 6, 2009, D055156) (*2009 Opinion*).

3      Although the Attorney General points out inconsistencies in the record

In 2009, this Court struck Simpson's conviction for grand theft of personal property, one prison term enhancement and five prior serious felony conviction enhancements. (*2009 Opinion, supra*, D055156.)

At the hearing on remittitur in 2010, the trial court imposed an indeterminate term of 50 years to life for robbery and evading an officer and a determinate term of 16 years for one prior prison term enhancement and three serious felony prior enhancements.

In 2022, Simpson petitioned for resentencing under section 1172.1. The trial court determined Simpson was ineligible for resentencing under section 1172.1, but he was eligible for a resentencing hearing under section 1172.75 because his sentence included a now-invalid prior prison term enhancement (§ 667.5, subd. (b)).

Following a hearing in 2023, the court resentenced Simpson to a total term of 50 years to life plus 5 years. Specifically, it sentenced Simpson to 25 years to life for robbery, 25 years to life for evading a police officer, and five years for one prior serious felony conviction. The court struck all other enhancements.

DISCUSSION

A.    *Relevant Legal Principles*

---

regarding the total indeterminate term, the sentencing hearing transcript reflects that Simpson was initially sentenced to 25 years to life for robbery, 25 years to life for evading a police officer, 50 years for the 10 serious felony prior offenses and one year each for the two prior prison terms. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 ["Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls."].)

California's "Three Strikes" law is intended " 'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious and/or violent felony offenses.' " (*People v. Sasser* (2015) 61 Cal.4th 1, 11, quoting § 667, subd. (b).) In applying the Three Strikes law, a trial court may strike a prior strike "in furtherance of justice." (§ 1385, subd. (a); see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529–530.) In deciding whether to do so, a court considers "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) "[T]he law creates a strong presumption that any sentence that conforms to [its] sentencing norms is both rational and proper." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

"[A] court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony, supra*, 33 Cal.4th at p. 374.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) Only in "an extraordinary case— where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ" would "the failure to strike . . . constitute an abuse of discretion." (*Id.* at p. 378)

Before "January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term and had

5

not remained free of custody for at least five years." (*People v. Burgess* (2022) 86 Cal.App.5th 375, 379–380.)  After January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) limited section 667.5's one-year prison prior enhancements to those terms served for sexually violent offenses. (Stats. 2019, ch. 590, § 1.)  One-year enhancements based on prior prison terms served for other offenses became legally invalid.  (*Burgess*, at pp. 379–380.)  In 2021, the Legislature enacted Senate Bill No. 483 (2021–2022 Reg. Sess.), which, among other things, made the changes implemented by Senate Bill No. 136 retroactive.  (*Burgess,* at p. 380.)

### B.    Analysis

#### 1.  *The court did not rely on incorrect facts.*

Simpson claims the court erred in resentencing him because it relied on an incorrect "hypothetical set of facts."  He asserts that the court erroneously believed he authored his book before his 2003 arrest for the instant offenses rather than "after the date of arrest and conviction."  (Italics omitted.)  We disagree.

The record demonstrates the trial court considered facts properly before it.  At the 2023 sentencing hearing, defense counsel explained:  Simpson was arrested in 2003; his book was published in 2005; and he was convicted in 2007.  Defense counsel argued that the book was not "instructive" about or "reflective of the last 20 years."  When the court pointed out that the manuscript was in the back of Simpson's car when he was arrested in 2003, defense counsel confirmed "[i]t was written before the date of this conviction." Later, the court specifically noted that Simpson's book was published in 2005 and republished in 2006.

Importantly, the court explained that "the vast majority of things that are discussed in this book occur[red] prior to his release [from prison on

6

parole] in 1989." The court considered Simpson's conduct and revelations about denouncing his gang affiliation that occurred many years earlier. Simpson had been "introspective," began "rethinking what he's been doing for all of these years," and started "to take . . . more affirmative steps to get out of the Crip gang." Even though "[t]he major things that [brought] to [Simpson's] conscience that need to change had already occurred," he still committed the instant offense in 2003. In other words, the revelations contained in the manuscript happened prior to the crime committed in this matter. Therefore, there is no indication the court relied on incorrect facts when it determined Simpson "does not fall outside of the spirit of our Three Strikes law."

2. *The court properly considered section 1172.75's factors.*

Simpson claims that the trial court was required to consider postconviction factors set out in section 1172.75 and that it failed to do so. Simpson is incorrect.

As an initial matter, the court's consideration of section 1172.75's postconviction factors was discretionary. (§ 1172.75, subd. (d)(3) ["the court may consider postconviction factors" in resentencing the defendant].) Moreover, the trial court considered defense counsel's argument, and all the briefing, exhibits, and the points raised by the defense. The court did not abuse its discretion by weighing the postconviction factors differently than Simpson wanted.

In accordance with section 1172.75, the trial court imposed "a lesser sentence than the one originally imposed as a result of the elimination of the

7

repeated enhancement." (§ 1172.75, subd. (d)(1).) The court struck the repealed enhancement (§ 667.5, subd. (b)) and ultimately imposed a reduced sentence of 50 years to life plus five years.

The trial court complied with the mandate in subdivision (d)(2) of section 1172.75, which required the court to "apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(1).) As the trial court noted, section 1385, subdivision (c)(1), is applicable and provides that unless prohibited by an "initiative statute," the trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so." "In exercising its discretion," the trial court is directed to "consider and afford great weight" to evidence of any of several mitigating circumstances, proof of which "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Id.*, subd. (c)(2).) The listed mitigating circumstances that weigh in favor of dismissing an enhancement include whether "[m]ultiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (*Id.*, subd. (c)(2)(B).)

Here, the trial court exercised its discretion under section 1385, subdivision (c) and struck two of the three section 667, subdivision (a), enhancements. It imposed a sentence on the single remaining section 667, subdivision (a) enhancement, for a total determinate term of five years. Simpson therefore received the relief provided under section 1385, subdivision (c)(2)(B), namely, that all enhancements beyond a single enhancement were dismissed. Notably, this is the precise relief Simpson requested from the trial court.

8

Simpson also asserts the court should have considered the other enumerated mitigating factors in section 1385, subdivision (c)(2), such as "his traumatic childhood" and "his age." The court was aware of the factors, as argued by defense counsel, and even expressly noted it considered whether Simpson's "youth and lack of development gave rise to the commission of those enhancements." Importantly, the court is presumed to have considered these factors when it exercised its section 1385, subdivision (c) discretion and dismissed two of the three section 667, subdivision (a) enhancements. (See *People v. Weddington* (2016) 246 Cal.App.4th 468, 492 ["we presume that the trial court followed established law and thus properly exercised its discretion in sentencing a criminal defendant"].) The trial court did not abuse its discretion by not dismissing the last remaining serious felony prior.

3. *Simpson forfeited his claim of error regarding his book.*

Finally, Simpson contends the court erred in admitting his book, *Inside the Crips*, written about his life and gang experience, because the court failed to first conduct the analysis for admitting "creative expression" provided by Evidence Code section 352.2.[4]

Evidence Code section 352.2 describes that prior to allowing use of a creative work as substantive evidence, as occurred here, a court must analyze the item using two approaches. First, the item is scrutinized for prejudice under Evidence Code section 352. Second, the trial court must consider:

> (1) the probative value of such expression for its literal
> truth or as a truthful narrative is minimal unless that

---

[4] Evidence Code section 352.2, subdivision (a) states that the statute applies "[i]n any criminal proceeding." During oral argument the People stated that this law only concerns jury trials. For our purposes we assume, without deciding, that Evidence Code section 352.2 applies to a postjudgment hearing.

expression is created near in time to the charged crime or crimes, bears a sufficient level of similarity to the charged crime or crimes, or includes factual detail not otherwise publicly available; and (2) undue prejudice includes, but is not limited to, the possibility that the trier of fact will, in violation of [Evidence Code] Section 1101, treat the expression as evidence of the defendant's propensity for violence or general criminal disposition as well as the possibility that the evidence will explicitly or implicitly inject racial bias into the proceedings. (Evid. Code § 352.2, subd. (a).)

This explicit analysis did not happen during the sentencing hearing.

Simpson forfeited his claim of error by failing to object on Evidence Code section 352.2 grounds below. By not objecting in the trial court Simpson deprived it of an opportunity to correct any potential error caused by admitting or relying on Simpson's book. (See *People v. Ramirez* (2006) 39 Cal.4th 398, 450 ["Defendant's failure to press the court for a ruling 'depriv[ed] the trial court of the opportunity to correct potential error' "].)

"As a general rule, only 'claims properly raised and preserved by the parties are reviewable on appeal.' " (*People v. Smith* (2001) 24 Cal.4th 849, 852.) Because Simpson failed to raise a timely and specific objection on this ground, he cannot raise the issue on appeal. (*People v. Pearson* (2013) 56 Cal.4th 393, 416 ["defendant's failure to make a timely and specific objection on the ground he now raises forfeits the claim on appeal"]; see also Evid. Code, § 353, subd. (a) [a finding shall not be reversed based on erroneous admission of evidence unless there was a timely motion to exclude stating the specific ground for the objection].)

Moreover, even if Simpson had not forfeited this claim of error, he invited it by requesting the court to rely on the book as mitigating evidence to support his *Romero* motion. " 'The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error

10

made by the trial court at his behest.  If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal.' " (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.)  Here, defense counsel pointed out that Simpson "published a book since his incarceration," that it "is essentially a memoir, . . . it outlines his life as a gang member."  He explained that the book "outlines all the ways that you shouldn't become a gang member" and noted it was used as a teaching tool in school curriculum. He told the court that "the very teaching, the very writing, the very memoir of this client before you" is "that being a gang member is . . . stupid."  He also argued the book was relevant to show how Simpson "has spent time" since his conviction "working on the fruits of the book," including "responding to kids who are susceptible."  It is unreasonable to expect the court would not read the book to determine if it supported the reasons for leniency advocated by Simpson's attorney.  In short, the record shows defense counsel advocated in favor of admitting the book into evidence to support a reduced sentence. Moreover, when the prosecutor sought to introduce Simpson's book into evidence, defense counsel inspected the book and consented to its admission. Thus, even if Simpson had not forfeited his challenge, it is precluded by the doctrine of invited error.

## DISPOSITION

The judgment is affirmed.

11

RUBIN, J.

WE CONCUR:


DATO, Acting P.J.


DO, J.